### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC MCGUIRE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | 2:23-CV-1347 |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONWIDE AFFINITY | ) | |
| INSURANCE COMPANY OF | ) | |
| AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

**J. Nicholas Ranjan, United States District Judge**

Pennsylvania law allows policyholders to "stack" the number of limits of uninsured (UM) or underinsured (UIM) motorist coverage in an automobile insurance policy based on the number of vehicles the policy insures. After a motor vehicle accident with an underinsured driver, Plaintiff Eric McGuire, Jr. sought to do exactly that. But Mr. McGuire had a problem. His father, who was the named insured on the automobile policy issued by Defendant Nationwide, had previously waived stacked coverage. When Nationwide refused to pay stacked coverage on that basis, Mr. McGuire sued, bringing a two-count complaint for breach of contract (Count I) and statutory bad faith (Count II).

The parties have filed cross-motions for summary judgment. Mr. McGuire doesn't contest that his father waived stacked coverage. He instead argues that the waiver applies to an earlier policy, not the policy he seeks coverage under now. Nationwide disagrees, asserting that the operative policy is merely a "renewal" of that prior policy to which the stacking waiver applied.

After comparing the two policies, the Court concludes that the operative policy of automobile insurance isn't a "renewal" policy. So the Court will grant Mr.

McGuire's motion and hold that Nationwide has breached its contract by denying stacking based on his father's prior waiver.  Since Mr. McGuire has effectively withdrawn his bad-faith claim,[1] the Court will grant Nationwide's motion on the bad-faith claim only, and will otherwise deny it.

## BACKGROUND

Mr. McGuire seeks insurance coverage for injuries he sustained in a June 7, 2022, motor-vehicle accident.  ECF 1-2, ¶¶ 6, 9.  After recovering the limits of the tortfeasor's insurance policy ($15,000), Mr. McGuire sought UIM coverage from the active Nationwide policy of automobile insurance issued to his father—policy number 5837J349976, with a policy period of March 31, 2022 to July 3, 2022.  *Id.* ¶¶ 5, 15-17; ECF 35-2.

The parties agree that Mr. McGuire is eligible for insurance coverage under his father's policy, and that he is owed UIM benefits.  ECF 34, p. 2.  Where the parties diverge is over the amount of UIM benefits owed.  According to Mr. McGuire, he is entitled to "stack" the limits of UIM coverage for the two vehicles insured under the operative policy, for a total of $200,000 in UIM benefits.  ECF 1-2, ¶¶ 17-18, 27-30.  Nationwide instead tendered payment of $100,000, the stated UIM "each person" limit of liability available for "any one person in any one accident."  *Id.* ¶ 30 n.1; ECF 35-2, pp. 7-9, 12.  In Nationwide's view, Mr. McGuire's father's previous waiver of stacking—under a policy with a different policy number, 5437E346960—continued with full force because the operative policy was merely a renewal of that prior policy to which the waiver applied.  ECF 34, pp. 6, 9.

Here is the parties' relevant course of dealing: in December 2012, Nationwide issued a policy of automobile insurance to Mr. McGuire's father, policy number

---

[1] Mr. McGuire notes in his reply brief that he doesn't oppose dismissal of the bad-faith claim (Count II), and doesn't otherwise provide any argument in support of it. *See* ECF 39, p. 1 n.1.

5437E346960, with a policy period of December 5, 2012 to June 5, 2013. ECF 35-4.[2] In connection with this policy, Mr. McGuire's father signed a stacking-rejection form, waiving his right to stack UM and UIM coverage limits for each vehicle insured by the policy. ECF 35-5. Executing that form was necessary because Pennsylvania law requires an express written waiver to waive stacking. *See* 75 Pa. Cons. Stat. Ann. § 1738. Reflecting Mr. McGuire's father's waiver, the policy contained UM and UIM "each person" coverage limits of $100,000 and listed those limits as "non-stacked." ECF 35-4, p. 8.

The 5437E346960 policy renewed every six months, ECF 35-4 pp. 7, 38-39; ECF 35-3, 10:18-22, and the policy number and coverage limits remained the same during each renewal. ECF 35-3, 14:14-24, 15:19-16:3. Mr. McGuire's father signed two more stacking-rejection forms when additional vehicles were added: once in September 2015 (ECF 35-6) and again in February 2018 (ECF 35-8). As with the first stacking-rejection form, the forms listed the policy number 5437E346960.[3] ECF 35-6; ECF 35-8. Each renewal policy issued after Mr. McGuire's father signed a new stacking-rejection form continued to reflect Mr. McGuire's father's decision to waive stacking. *See, e.g.*, ECF 35-13, pp. 6-7 (June 5, 2020 to December 5, 2020, policy with declarations page listing UM/UIM coverage as "non-stacked").

When the policy was set to renew for the December 5, 2020 to June 5, 2021, policy period, the policy number changed from 5437E346960 to 5837J349976. ECF

---

[2] This policy, and all renewals before the number changed, are referred to as the "5437E346960 policy."

[3] All three stacking-rejection forms actually contain a slightly different policy number than the policies themselves. *Compare* ECF 35-5, ECF 35-6, and ECF 35-8 (bearing policy number 54E346960), *with* ECF 35-4, ECF 35-7, ECF 35-9, and ECF 35-13 (bearing policy number 54***37***E346960). This looks to be a scrivener's error, as the parties don't suggest that the stacking-rejection forms are invalid because of this issue (or even discuss it at all).

35-10, p. 5.  Neither UM nor UIM coverage limits changed; the "each person" coverage limits remained $100,000 and the declarations page again listed the limits as "non-stacked."  ECF 35-10, pp. 6-7.  According to Nationwide, the policy number change was the product of Nationwide's "One Product Initiative," which was Nationwide's "effort to consolidate and unify the multiple disparate policies of motor vehicle insurance" it issued in Pennsylvania.  ECF 34, p. 4; ECF 35-3, 16:4-19:11.

Mr. McGuire's father didn't purchase any new coverages or do anything else to cause Nationwide to issue the "One Product" policy to him; Nationwide instead issued the policy at the expiration of the previous 5437E346960 policy's six-month period, as it had done so with prior policy renewals.  ECF 35-3, 35:9-21.  Nationwide did so after submitting the One Product policy to the Pennsylvania Insurance Department, which, after some back and forth, reviewed and approved it as a "renewal" policy. ECF 35-3, 19:16-21, 21:7-12; ECF 35-11, 15:4-7.

As with the 5437E346960 policy, the One Product policy was also set to renew every six months.  ECF 35-10, pp. 5, 32.  The parties agree that the operative One Product policy (policy period of March 31, 2022 to July 3, 2022) is a renewal of this original One Product policy.

Around that time, Nationwide also sent a "notice of policy change."  ECF 35-12.  The notice informed policyholders that the policy number would change, but "Coverage . . . [would be] renewed under the terms and conditions of your renewal policy[.]"  *Id.* at 1.  It also disclosed, however, that the renewal policy "may include changes to the available coverage, coverage limits and deductibles[,]" and directed policyholders to a section of the notice titled "description of changes."  *Id.*  In that section, among other changes, the notice identified five "Clarifications to coverage in the policy":

**Clarifications to coverage in the policy**
- Clarification added that there is no coverage under Parts A, C and D when a covered vehicle is used by any insured who is logged into a transportation network platform as a driver, whether or not a passenger is occupying the vehicle
- Current Unauthorized Use of Other Motor Vehicles exclusion has been moved from General Policy Conditions to Parts A, C and D and clarifies that non-permissive use includes operating a vehicle while license suspended, revoked or never issued. This does not apply to the use of your covered auto by you, a family member or a business partner, employee or agent of you or a family member
- Clarification added that the rented or leased to others exclusion includes vehicle sharing under Parts A and D
- Punitive damages are not a covered cause of loss under Parts A and C
- Clarification added to racing exclusion under Parts A, C and D that "performance testing" is not covered

*Id.* at 2.  It is these "clarifications" that form the basis of Mr. McGuire's argument before the Court now—*i.e.*, that these clarifications were really reductions in coverage.

When Nationwide declined to stack limits, Mr. McGuire filed a complaint in the Allegheny County Court of Common Pleas, which Nationwide removed to this Court on July 27, 2023.  ECF 1.  On August 30, 2023, the Court denied Nationwide's motion to dismiss the complaint, and ordered limited and expedited discovery on the stacking issue.  ECF 18.  After discovery, the parties cross-moved for summary judgment.  The Court also issued an order, inviting the Pennsylvania Insurance Department to submit an amicus brief and participate in an oral argument on the cross-motions; the Insurance Department declined.  ECF 42.  After briefing by the parties, the Court heard oral argument from the parties on the cross-motions on May 30, 2024.  ECF 43.  The cross-motions are now ready for disposition.

## DISCUSSION & ANALYSIS[4]

### I.    A new policy with new terms and conditions for UM/UIM coverage requires a new stacking waiver.

As framed by the parties, the present dispute centers on whether the Nationwide One Product policy was a new policy, or a renewal of the prior policy.

_____

[4] "Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

ECF 34, pp. 9-10; ECF 37, p. 1.  The parties agree that if it's a renewal, then Pennsylvania law doesn't require a stacking waiver.  But if it's a new policy—in other words, with reduced types or limits of coverage—then the parties again agree a new waiver is required.  ECF 34, p. 5; ECF 37, p. 1.  The Court too agrees with this framing of the issue.

Under Pennsylvania law, policyholders may "combine[] the insurance coverage of individual vehicles within their [motor vehicle] policy[,]" a process known as "intra-policy" stacking.  *Miale v. Nationwide Ins. Co. of Am.*, 577 F. Supp. 3d 388, 392 (W.D. Pa. 2021) (Wiegand, J.) (cleaned up); *see also Donovan v. State Farm Mut. Auto. Ins. Co.*, No. 19-2733, 2022 WL 473025, at *1 (3d Cir. Feb. 16, 2022) ("Intra-policy stacking is the aggregation of the coverage limits on multiple vehicles covered under a single policy—even though not all vehicles are involved in the accident or occurrence.").

Stacking is governed by Section 1738 of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), which provides that "the stated limit for uninsured or underinsured coverage shall be the sum of the limits for each motor vehicle as to which the injured person is an insured."  75 Pa. Cons. Stat. Ann. § 1738(a).  "By its terms, this provision makes stacked underinsured motorist coverage the 'default coverage' when 'more than one vehicle is insured under one or more policies providing for uninsured/underinsured motorist coverage.'"  *Dunleavy v. Mid-*

---

law."  *Goldenstein v. Repossessors, Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (cleaned up).  "[A]ll reasonable inferences from the record must be drawn in favor of the nonmoving party and the court may not weigh the evidence or assess credibility."  *Id.* (cleaned up).  "The rule is no different where there are cross-motions for summary judgment."  *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008).  The parties' filing of cross-motions "does not constitute an agreement that if one is rejected the other is necessarily justified[.]"  *Id.* (cleaned up).  But the Court may "resolve cross-motions for summary judgment concurrently."  *Hawkins v. Switchback MX, LLC*, 339 F. Supp. 3d 543, 547 (W.D. Pa. 2018) (Conner, J.) (cleaned up).  When doing so, the Court views the evidence "in the light most favorable to the non-moving party with respect to each motion."  *Id.*

*Century Ins. Co.*, 460 F. Supp. 3d 602, 608 (W.D. Pa. 2020) (Ranjan, J.), *aff'd*, 848 F. App'x 528 (3d Cir. 2021) (quoting *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131, 137 (Pa. 2019) (cleaned up)).  In exchange for reduced premiums, however, policyholders can "waive[] stacked coverage limits by signing a written waiver form, the text of which is dictated by Subsection 1738(d)." *Erie Ins. Exch. v. Mione*, 289 A.3d 524, 529 (Pa. 2023).  If the policyholder does so, then "the limits of coverage . . . [are] the stated limits for the motor vehicle as to which the injured person is an insured."  75 Pa. Cons. Stat. Ann. § 1738(b).

The onus is on the insurer to obtain a stacking waiver.  "[A]n insurance company must offer an insured the opportunity to waive stacking of UIM coverage limits whenever she purchases UIM coverage 'for more than one vehicle under a policy.'" *Barnard v. Travelers Home & Marine Ins. Co.*, 216 A.3d 1045, 1051 (Pa. 2019) (quoting 75 Pa. Cons. Stat. Ann. § 1738(c)).[5]  The "'purchase' pertains to UIM/UM coverage rather than the underlying policy itself." *Franks v. State Farm Mut. Auto. Ins. Co.*, 292 A.3d 866, 872 (Pa. 2023).

This obligation extends beyond a policyholder's initial purchase of an insurance policy to "any time an insured pays to obtain UIM coverage for multiple vehicles, regardless of whether this acquisition occurs when an individual initially applies for insurance, or when she subsequently pays to obtain additional UIM

---

[5] In full, that subsection provides:

> **(c) More than one vehicle.**--Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

75 Pa. Cons. Stat. Ann. § 1738(c).

coverage." *Barnard*, 216 A.3d at 1052. "If an insurance company does not obtain a stacking waiver at that time, the amount of UIM coverage available to an insured" remains the default: "'the sum of the limits for each motor vehicle as to which the injured person is an insured.'" *Id.* at 1051 (quoting 75 Pa. Cons. Stat. Ann. § 1738(a)).

Generally, a "purchase" of coverage "requires two things: (1) the acquisition of something [the policyholder doesn't already possess]; and (2) payment." *Barnard*, 216 A.3d at 1053. That doesn't mean every "change" to a policy is a "purchase," however. *Franks*, 292 A.3d at 873. Rather, that principle applied, a policyholder "purchases" new coverage when a new vehicle is added to a policy via an endorsement or certain after-acquired-vehicle clauses. *See Sackett v. Nationwide Mut. Ins. Co.,* 919 A.2d 194 (Pa. 2007) (*Sackett I*); *Sackett v. Nationwide Mut. Ins. Co.*, 940 A.2d 329 (Pa. 2007) (*Sackett II*); *Sackett v. Nationwide Mut. Ins. Co.*, 4 A.3d 637 (Pa. Super. Ct. 2010), *appeal denied*, 34 A.3d 83 (Pa. 2011) (*Sackett III*). A policyholder also "purchases" new coverage when he increases his UM/UIM coverage limits on an existing-multi-vehicle policy. *Barnard*, 216 A.3d at 1052.

As is evident from the above description of the controlling cases, the cases concerning the issue of what constitutes a "purchase" arise generally in the context of adding and removing vehicles on a policy or modifying the limits under the policy. None of them concern a situation where, as argued here by Mr. McGuire, the conditions governing the scope of coverage are reduced by a subsequent policy. But applying the logic of the Pennsylvania Supreme Court's prior decisions, obtaining a policy with a different scope of coverage—even if it's the result of a reduction in coverage—is the "purchase" of something the policyholder didn't already possess, *i.e.*, an entirely new policy.[6] Conversely, obtaining a renewal of a policy, where the scope

---

[6] Indeed, the Pennsylvania Supreme Court qualified its holding in *Franks*—that removing a vehicle from coverage under a multi-vehicle policy isn't a "purchase" as *Barnard* defined the term—by the fact that the removal was "under conditions ***that***

of coverage is the same, isn't a "purchase."[7]

In sum, the dispute centers on whether the One Product policy reduced the scope of coverage, or whether it was just a renewal—an issue to which the Court next turns.

## II.    The One Product policy was not a renewal because it was a reduction in the scope of coverage.

To answer whether the One Product policy renewed the 5437E346960 policy, both parties direct the Court to 40 Pa. Stat. Ann. § 991.2001.  ECF 34, p. 9; ECF 37, p. 4; ECF 45, 14:12-13, 16:18-20.[8]  Section 991.2001 defines "renewal" or "to renew,"

---

*[didn't] alter the pre-existing coverage* or costs relative to the remaining vehicles" insured under the policy.  *Franks*, 292 A.3d at 873 (emphasis added).

[7] The parties don't cite any authority that a "renewal" isn't a "purchase," but it's a reasonable assumption.  *See Sackett (I)*, 919 A.2d at 203 (stating without discussion in dicta that changes such as "simply replac[ing] a vehicle, or renew[ing] an existing policy . . . *are not purchases of coverage within the meaning of Section 1738*) (emphasis added)).

[8] Section 991.2001's definitions apply to the "words and phrases" "[a]s used in *this* article."  40 Pa. Stat. Ann. § 991.2001 (emphasis added).  That article, Article XX, "establishes a regulatory scheme in Pennsylvania that prohibits insurance companies from cancelling, refusing to write, and refusing to renew automobile insurance policies for certain discriminatory reasons."  *Ke v. Allstate Fire & Cas. Ins. Co.*, 266 A.3d 611 (Table), No. 1165 EDA 2020, 2021 WL 4551689, at *3 n.1 (Pa. Super. Ct. 2021).  As a result, at least one court in this circuit has expressed skepticism over its application to the MVFRL.  *See Standard Fire Ins. Co. v. Poslusney*, No. 3:06-2357, 2008 WL 11367546, at *2 (M.D. Pa. July 28, 2008) ("The general assembly did not design the definition of 'renewal' . . . to apply to the interpretation of the MVFRL but to specifically apply when analyzing whether an insurer violated article XX[.]").

The Court respectfully disagrees with its sister court about Section 991.2001's applicability here.  Article XX may not be in the MVFRL, but it does apply specifically to motor vehicle insurance.  Moreover, the Third Circuit found the previous version of Section 991.2001 (then codified at 40 Pa. C.S. § 1008.1) helpful in determining whether a commercial automobile insurance policy was a renewal.  *See Travelers Indem. Co. of Illinois v. DiBartolo*, 171 F.3d 168, 173 (3d Cir. 1999).  Indeed, the Court implied that the "definition d[id] not compel a result *in [that] context*" because the

in relevant part, as follows:

> **"Renewal"** or **"to renew."** To issue and deliver at the end of an
> insurance policy period a policy which supersedes a policy previously
> issued and delivered by the same insurer or affiliated insurer and ***which***
> ***provides types and limits of coverage at least equal to those***
> ***contained in the policy being superseded***[.]

40 Pa. Stat. Ann. § 991.2001 (emphasis added).

Nationwide argues that the One Product policy meets the Section 991.2001 definition of "renew" because it provides the same term of coverage as the 5437E346960 policy (renewing every six months), and the same amount of coverage ("each person" UM/UIM limits of $100,000, non-stacked). ECF 34, pp. 6, 9; ECF 38, p. 4. Nationwide also relies heavily on the Pennsylvania Insurance Department's "conclu[sion] that the One Product Policy did not limit or reduce the coverage that had been afforded under prior policies." ECF 38, pp. 4-5; ECF 34, pp. 9-10. Indeed, it asserts that the Court should give "substantial deference" to the Insurance Department's decision to approve the One Product policy as a renewal and without requiring Nationwide to request new stacking-rejection forms. ECF 34, p. 9; ECF 38, pp. 7-8.

Mr. McGuire doesn't dispute that the limits of coverage are the same between the 5437E346960 policy and the One Product policy. He instead zeros in on what Nationwide's One Product policy notice described as "clarifications" to coverage. ECF 37, p. 5. He argues "clarifications" is a self-serving misnomer; that they are instead policy changes, "additions of new terms and exclusions that substantially reduce coverage." *Id.* In his view, the Insurance Department simply "got it wrong" when it permitted Nationwide to issue the One Product policy as a renewal. *Id.* p. 3. In any

---

definition of renewal pertained to "certain noncommercial automobile policies, not . . . the [commercial] policy at issue" in that case. *Id.* (emphasis added).

event, Mr. McGuire asserts that the Insurance Department isn't owed any deference, because the Court must compare and interpret the terms of the policies to determine whether coverage is reduced, not engage in statutory construction. *Id.* pp. 12-13.

Having considered these arguments, the Court declines to defer to the Insurance Department because any special deference (if such a doctrine still exists) only kicks in to resolve a statutory ambiguity, which is absent here. Moreover, the Insurance Department applied the statutes to the facts, rather than interpreted the meaning of the statutes, which further suggests deference is inappropriate, and it isn't clear that the Insurance Department even examined the issues Mr. McGuire raises now. In the absence of deference, the Court holds that at least two of the "clarifications" made to the One Product policy reduce coverage that would have been available under the 5437E346960 policy. The Court therefore agrees with Mr. McGuire that the One Product policy isn't a "renewal" policy of insurance. Finally, Nationwide raises a public-policy argument in support of its position, but that doesn't change the Court's conclusion.

### A.    The Court doesn't defer to the Insurance Department.

The Insurance Department is the agency charged with the administration of the MVFRL. *See* 75 Pa. Stat. Ann. § 1704(b). Pennsylvania courts have thus expressed that the Insurance Department's interpretation of the MVFRL should be "afford[ed] great deference . . . absent fraud, bad faith, abuse of discretion or clearly arbitrary action." *Winslow-Quattlebaum v. Maryland Ins. Grp.*, 752 A.2d 878, 881 (Pa. 2000).

To avoid this, Mr. McGuire argues the Insurance Department abused its discretion by approving the One Product policy as a renewal. ECF 37, p. 13. But the Court need not answer that question, assuming special deference is ever owed,[9] for

---

[9] Several Pennsylvania Supreme Court Justices have questioned whether this "substantial" or "great" deference follows Pennsylvania's Statutory Construction Act,

at least three reasons.

First, and most importantly, this deference only applies when the statute is ambiguous. *Crown Castle NG E. LLC v. Pennsylvania Pub. Util. Comm'n*, 234 A.3d 665, 677 (Pa. 2020) ("A court does not defer to an administrative agency's interpretation of the plain meaning of an unambiguous statute because statutory interpretation is a question of law for the court."); *see also Sackett (II)*, 940 A.2d at 333 n.4 ("[T]he substantial context furnished by the Insurance Commissioner reveals an ambiguity in Section 1738(c), which permits the application of principles of statutory construction, including . . . the administrative interpretation of the statute. Given the Insurance Department's [role, expertise, and tools,] we afford substantial deference to its interpretation in the present instance insofar as it is consistent with actual policy terms[.]" (cleaned up)).

The Pennsylvania Supreme Court has already determined that the term "purchase" in Section 1738 is unambiguous. *See Barnard*, 216 A.3d at 1051-54 (applying plain dictionary definition); *Franks*, 292 A.3d at 872 ("[S]ection 1738 is not inherently ambiguous nor does it reflect an ambiguity in context with other aspects

---

which directs that, when interpreting an ambiguous statute, "legislative and administrative interpretations" are only one of several matters to be considered. 1 Pa. Cons. Stat. Ann. § 1921(c); *Woodford v. Ins. Dep't*, 243 A.3d 60, 83 (Pa. 2020) (Donohue, J., concurring) (explaining agency deference is only one factor to consider); *Harmon v. Unemployment Comp. Bd. of Rev.*, 207 A.3d 292, 310 (Pa. 2019) (Wecht, J., concurring) (same); *cf. Gen. Motors, LLC v. Bureau of Pro. & Occupational Affs.*, 212 A.3d 40, 86 & n.2 (Pa. 2019) (Mundy, J., dissenting) (collecting cases demonstrating the court's "willingness to chip away at the administrative deference rule" and suggesting the court "should directly address the issue of administrative deference and review whether such a rule is still cogent in Pennsylvania").

Further, "[t]he notion of 'special deference' is taken from the United States Supreme Court's decision in *Chevron*[.]" *Woodford*, 243 A.3d at 78 (Donohue, J., concurring). With the recent demise of *Chevron*, *see Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024), it seems likely that any remaining vestiges of Pennsylvania's "special deference" doctrine will soon follow.

of the MVFRL."). The parties don't suggest otherwise, or that it is ambiguous when considered with Section 991.2001.

Second, this is not a case where the Insurance Department has formally explained its interpretation of the term "purchase" in this context. Indeed, in *Sackett (II)*, the Pennsylvania Supreme Court deferred to the Insurance Commissioner only after inviting the Commissioner to opine on the dispute. Yet here the Insurance Department declined this Court's invitation to file an amicus brief. ECF 41. It instead submitted that "[t]he issues in this case are fact-specific and beyond a mere legal query within the scope of the Department's regulatory authority." ECF 42. That too weakens any claim that the Court owes deference. *Cf. Nationwide Ins. Co. v. Schneider*, 960 A.2d 442, 450 (Pa. 2008) (not applying deference rule where Insurance Department declined to file amicus brief and stated the case didn't involve issues within its regulatory expertise or directly impacting widespread consumer interests).

Third, there is nothing to defer to. Nationwide points to the Insurance Department's "objection letter," where it identified some policy language that could be construed as a change in terms of the policy when Nationwide sought renewal approval for its One Product form. ECF 35-14 (Insurance Department "Objection Letter" to One Product policy proposal). The Insurance Department didn't identify the clarifications to which Mr. McGuire now points. The absence of any discussion on those points isn't any sort of reasoned analysis to which the Court can or should defer. And the Court can't infer that the Insurance Department's silence on the clarifications means that that it even considered them.

The Court thus independently reviews whether the One Product policy "renewed" the 5437E346960 policy.

**B.      The One Product policy isn't a "renewal" policy of insurance because there are some reductions in the scope of UM/UIM coverage.**

Mr. McGuire presents four "factual scenarios" to illustrate how the One Product policy "clarifications" strip away coverage otherwise available under the 5437E346960 policy.  ECF 37, pp. 5-9.  Nationwide disputes this approach, arguing that the Court's consideration of the scenarios would turn the case into a declaratory-judgment action and reduce the Court's opinion to an advisory one.  ECF 38, pp. 1-2. The Court disagrees.

"Federal courts have no jurisdiction to render advisory opinions.  Put another way, they may not decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law would be upon a hypothetical state of facts." *In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 421 (3d Cir. 2013) (cleaned up).  But that isn't what Mr. McGuire is asking for here.

As Mr. McGuire correctly notes, "there is an actual injury and controversy before the Court[.]"  ECF 39, p. 2.  Mr. McGuire alleges that he is owed an additional $100,000 under his father's Nationwide insurance policy.  He alleges that Nationwide won't pay this stacked UIM benefit because it is standing on an inapplicable stacking-rejection form.  In reaching this decision, the Court can (and, in fact, must) examine the scope of any policy changes to determine whether there is a reduction in coverage. The hypotheticals offered by Mr. McGuire are a permissible way for the Court to examine any potential changes in coverage.

Indeed, this is an approach fully supported by the Third Circuit.  In *Indian Harbor Insurance Co. v. F & M Equipment, Ltd.*, the Third Circuit cataloged the differences between a pollution insurance policy and the policy it was purportedly renewing.  804 F.3d 310, 315 (3d Cir. 2015).  Among them was the addition of an exclusion for a previously covered location.  *Id.* at 311-12, 315.  The Court concluded that this change in the "scope of coverage" of the renewal policy, among the other

-14-

changes, meant the policyholder was entitled to summary judgment as to whether the insurer "breached its promise to offer a renewal extension of coverage." *Id.* at 315-16. So the Third Circuit was doing just as the Court does here: determining that, under a hypothetical (the policyholder seeking insurance coverage for that site under the renewal policy), coverage would be reduced.

The Court thus turns to Mr. McGuire's hypotheticals.[10] As discussed below, at least two of them illustrate that the One Product policy reduces coverage previously available under the 5437E346960 policy.

### 1. Scenario 3: "Vehicle sharing program."

In his third scenario, Mr. McGuire directs the Court to an exclusion related to vehicle sharing. ECF 37, p. 8. In the One Product policy, the exclusion precludes coverage for UM/UIM bodily injury sustained by any insured "[w]hile 'occupying', or when struck by, 'your covered auto' while[ e]nrolled in a personal vehicle sharing program under the terms of a written agreement" and "[b]eing used in connection with such personal vehicle sharing program by anyone other than you or any 'family member[.]'" ECF 35-10, pp. 53-54 (UM exclusion B.5), 57 (UIM exclusion B.4).

Mr. McGuire contends that under the 5437E346960 policy, the analogous exclusion applies only when a vehicle is "rented or leased to others by any insured[.]" ECF 37, p. 8. He argues that he would be covered under this version but not the One Product policy version if he was struck, when riding in his vehicle as a passenger,

---

[10] Mr. McGuire suggests that there are "at least 20 discrete reductions in coverage on the [One Product policy]." ECF 37, p. 11. To get that number, he multiples the four scenarios by five coverage parts: UM/UIM coverage, coverage for property damage, and liability coverage (for property damage and bodily injury). *Id.* "The matter of importance . . . pertains only to the UM/UIM policy coverage, whether it has changed, and whether a new waiver of stacked coverage is required." *Shipp v. Phoenix Ins. Co.*, 51 A.3d 219, 224 (Pa. Super. Ct. 2012) (finding "the addition of collision coverage to be irrelevant to the issue of stacking under section 1738"). So only changes to UM/UIM coverage are relevant here.

while it was operated by his neighbor under the written terms of a personal vehicle sharing program. *Id.*

The Court agrees that the One Product policy reduces coverage in this scenario, but for a different reason than Mr. McGuire proposes. The 5437E346960 policy's exclusion pertains to the "auto liability" coverage part, not the UM/UIM coverage parts. ECF 35-13, p. 20 (providing "***This coverage*** [auto liability] does not apply to" exclusion 10). There isn't a comparable exclusion in the UM/UIM coverage parts, and there isn't anything else in the policy that would serve the same function.

Accordingly, UM/UIM coverage is reduced under the One Product policy's version of the exclusion, meaning the One Product policy isn't a renewal of the 5437E346960 policy.

### 2.    Scenario 4: "Reasonable belief."

In his fourth scenario, Mr. McGuire highlights the "non-permissive use" exclusion,[11] pertaining to the use of a vehicle without the permission of its owner. ECF 37, p. 9.  In the 5437E346960 policy, the exclusion bars UM/UIM bodily injury coverage for the "[u]se of any motor vehicle by an insured without the owner's permission."  ECF 35-13, pp. 29 (UM exclusion 2), 33 (UIM exclusion 2).  In the One Product policy, the exclusion replaces the "permission" language with a requirement that the insured not be "[u]sing a motor vehicle . . . [w]ithout a reasonable belief of being entitled to do so[.]"  ECF 35-10, pp. 53 (UM exclusion B.3), 57 (UIM exclusion B.2).[12]  The One Product policy doesn't define "reasonable belief," but the exclusion qualifies the coverage in that "[a]n 'insured' shall not be held to have a reasonable belief of being entitled to operate a motor vehicle if that person's license has been suspended, revoked or never issued."  *Id.*

Based on this addition, Mr. McGuire argues that he would have been covered under the 5437E346960 policy, but not the One Product policy, if he was struck and injured while driving a car on a suspended license—even though he received permission from its owner to use it.  ECF 37, p. 9.  Because Mr. McGuire's interpretation is a reasonable one, and because exclusions are "always strictly construed against the insurer and in favor of the insured[,]" the Court agrees.  *PNC Fin. Servs. Grp., Inc. v. Houston Cas. Co.*, 647 F. App'x 112, 117 (3d Cir. 2016) (cleaned up); *see also  Mut. Benefit Ins. Co. v. Politsopoulos*, 115 A.3d 844, 852 n. 6 (Pa. 2015) ("[P]olicy exclusions are to be construed narrowly in favor of coverage.").

---

[11] *See Nationwide Mut. Ins. Co. v. Cummings*, 652 A.2d 1338, 1344 (Pa. Super. Ct. 1994) (naming and discussing exclusion).

[12] This "reasonable belief" exclusionary language does show up in the 5437E346960 policy, but in the "general policy conditions" versus the specific UM/UIM exclusions. *See* ECF 35-13, p. 37.  Further, unlike the One Product policy, it doesn't qualify the "reasonable belief" language.

The analysis starts with the plain language of the exclusion.  The word "permission" is undefined.  "Where terms are left undefined in an insurance policy, such terms must be afforded their plain meaning as set forth in the dictionary." *Neville Chem. Co. v. TIG Ins. Co.*, 570 F. Supp. 3d 309, 315 (W.D. Pa. 2021) (Eddy, M.J.), *aff'd*, No. 21-1616, 2022 WL 1222178 (3d Cir. Apr. 26, 2022).

"Permission" is commonly understood to mean "[t]he action of permitting, allowing, or giving consent[,]" "consent, leave, or liberty to do something[,]" or "[a] licen[s]e or freedom to do something; the granting of such freedom[.]" *Permission*, Oxford English Dictionary (June 2024); *see also Permission*, Merriam-Webster Dictionary (2024) ("the act of permitting" and "formal consent: authorization"); *Permission*, Black's Law Dictionary (11th ed. 2019) ("The act of permitting; the official act of allowing someone to do something" and "A license or liberty to do something; authorization").  These definitions focus on the relationship between the permitter and permittee; not the legality of the permission.

Pennsylvania case law supports this interpretation.  In distinguishing a grant of coverage requiring a vehicle owner's "permission" to use the vehicle, from an exclusion requiring a "reasonable belief" of entitlement to use a vehicle, one state court explained that "[a]lthough one can obtain an owner's permission to operate a vehicle without being licensed, one cannot have a reasonable belief of entitlement to operate any vehicle without a valid license." *Goodman v. Bradbury*, 3 Pa. D. & C.4th 605, 608 (Com. Pl. 1989)[13] (discussing *Bash v. Hittman*, 23 Pa. D. & C.2d 453 (Pa. Com. Pl. 1961) (ignoring fact that vehicle operator was unlicensed in determining

---

[13] *Goodman* conflicts with an earlier Pennsylvania Superior Court decision insofar as one may have a reasonable belief of entitlement despite a lack of a license.  *State Farm Mut. Auto. Ins. Co. v. Moore*, 544 A.2d 1017, 1020 (Pa. Super. Ct. 1988).  This conflict doesn't diminish the court's statement in *Goodman*, however, that one can have permission without a license.

whether he had owner's permission to drive vehicle)); *cf.* Jordan R. Plitt et al., 8 Couch on Ins. § 112:18 (June 2024) ("The fact that the permittee may not legally drive an automobile generally does not affect the permission granted him or her insofar as the omnibus clause is concerned.").

The Pennsylvania Superior Court decision *State Farm Mutual Automobile Insurance Co. v. Moore*, 544 A.2d 1017 (Pa. Super. Ct. 1988) is also supportive. There, a policy excluded liability coverage "[f]or any person using a vehicle without a reasonable belief that the person is entitled to do so." *Id.* at 1019.[14] The Superior Court upheld the jury verdict on the ground that the word "entitled" was ambiguous, because it could mean that 1) "for a person to reasonably believe that he is entitled to use a car a person must have the owner's permission and a valid driver's license . . . [or 2)] that a person can reasonably believe he is entitled to use a car once he has obtained the owner's permission." *Id.* Accordingly, although the Superior Court wasn't examining the "permission" version of the exclusion, it differentiated between "permission" and "a valid driver's license."

Nothing in the rest of the 5437E346960 policy militates against this interpretation of the exclusion. The 5437E346960 policy references "licenses" four times:

- ***First***, in an exclusion to the "Physical Damage" coverage part: "We will not pay for loss: . . . To any **motor vehicle** when operated by an Individual without a current valid operator's license." ECF 35-13, p. 15 (exclusion 17);

- ***Second***, in an exclusion to the "Auto Liability" coverage part: "This coverage does not apply to: . . . Any **motor vehicle** when operated by an Individual without a current valid operator's license." *Id.* at p. 20-21 (exclusion 15);

- ***Third***, in an exclusion to the "First Party Benefits" coverage part: "We will not pay First Party Benefits in certain circumstances, as follows: . . . There is no coverage for anyone from the use of any **motor vehicle** when operated by an

---

[14] The exclusion did not have the unlicensed qualifier contained in the One Product policy's version.

individual without a current valid operator's license." *Id.* at p. 25-26 (exclusion 13); and

- ***Fourth***, in the "General Policy Conditions," stating Nationwide "***may*** cancel [coverage] during an annual policy period: . . . If the driver's license or **motor vehicle** registration of any named Insured has been suspended or revoked during the policy period[.]" *Id.* at p. 37 (¶ 5(b) (emphasis on "may" added)).

So Nationwide expressly excluded coverage for individuals without a license in three different coverage parts, but not the UM/UIM coverage parts. And the only reference to "license" that applies to all coverage parts doesn't indicate that Nationwide ***will*** exclude coverage if the insured's license is suspended or revoked.

Nationwide "was free to include" language qualifying that the permission must be lawfully given, or to expressly say that permission wouldn't apply to an unlicensed driver. *Werkman v. Erie Ins. Exch.*, 629 A.2d 1042, 1046 (Pa. Super. Ct. 1993). Nationwide "could also have listed persons without a driver's license as an additional exclusion." *Moore*, 544 A.2d at 1020. Given the exclusionary language in other coverage grants, Nationwide knew how to do that when it wrote the 5437E346960 policy. It didn't do so. The 5437E346960 policy's non-permissive use exclusion thus "was not intended to be so limited." *Countryway Ins. Co. v. Slaugenhoup*, 360 F. App'x 348, 351 (3d Cir. 2010) (holding exclusion wasn't limited where limiting language was in other exclusions but not the subject exclusion).

In short, Mr. McGuire is right. The prior policy's exclusion didn't exclude UM/UIM coverage for an unlicensed driver. And the One Product policy clearly does. But even if the Court were to credit some alternative interpretation that would make "permission" and "reasonable belief" synonymous, at most, that just makes the exclusion ambiguous. *See Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 163 (3d Cir. 2011) ("An ambiguity in contract language exists when the questionable term or language, viewed in the context of the entire policy, is reasonably susceptible of different constructions and capable of being understood in more than one sense."

(cleaned up)).  Since ambiguities are resolved in the policyholder's favor, the outcome is the same: the 5437E346960 policy's exclusion wouldn't bar recovery.  *See Prudential Prop. & Cas. Ins. Co. v. Sartno*, 903 A.2d 1170, 1177 (Pa. 2006) ("Regardless of which one is 'right' or 'wrong,' the fact is that because each interpretation is reasonable, the exclusionary term is ambiguous, and we must construe it in favor of the insured.").

The One Product policy thus reduces coverage from the 5437E346960 policy based on this exclusion, too.

### C.    Public policy does not compel a different result.

Lastly, Nationwide also raises a public-policy argument.  It warns of "substantial negative consequences for Nationwide customers across Pennsylvania" if the Court were to find that the One Product policy isn't a renewal policy.  ECF 34, p. 10.  Namely, that Nationwide's customers would need to execute not only new stacking-rejection forms, but also "all of the other statutorily required forms[,]" or risk erasure of their reduced premiums.  *Id.*  Nationwide asserts "that this would offend the public policy underlying the MVFRL, which was to reduce the 'spiraling consumer cost of automobile insurance.'"  *Id.* (quoting *Pa. Nat. Mut. Cas. Co. v. Black*, 916 A.2d 569, 579-80 (Pa. 2007)).[15]

The Court doesn't find this argument persuasive.  "[I]nvocations of, and arguments about, public policy cannot override the plain language of Subsection 1738(c)," of Section § 991.2001, or of Nationwide's insurance policies.  *Barnard*, 216 A.3d at 1054.

---

[15] Even as a matter of public policy, what is at issue here is the postage costs of Nationwide having to mail out new forms to its insureds—something that it could likely do with annual renewal notices.  There is nothing in the MVFRL or Pennsylvania cases that suggest that the cost of postage was a driver behind any provision in the law.

## <u>CONCLUSION</u>

For the above reasons, the Court hereby **GRANTS** Mr. McGuire's motion for summary judgment (ECF 36).  It also **GRANTS** Nationwide's motion for summary judgment with respect to the bad-faith claim only; Nationwide's motion is otherwise **DENIED** (ECF 33).  A separate order follows.


Date: September 11, 2024                    BY THE COURT:

                                           /s/ J. Nicholas Ranjan
                                           United States District Judge