## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIC MCGUIRE, JR.,       )
                          )
        Plaintiff,      )    2:23-CV-1347
                          )
       v.            )
                          )
NATIONWIDE AFFINITY    )
INSURANCE COMPANY OF   )
AMERICA,               )
                          )
        Defendant.    )

### MEMORANDUM ORDER

**J. Nicholas Ranjan, United States District Judge**

On September 11, 2024, the Court issued an opinion, granting partial summary judgment in this underinsured-motorist coverage case. ECF 48. As the parties made clear, the key dispute in this case was whether Nationwide's "One Product" policy was a new policy or a renewal of the prior policy. In the Court's opinion, the Court examined several of the so-called "clarifications" in the One Product policy and concluded that at least some of them were really changes that reduced the amount of coverage from the prior policy. Because of this, the One Product policy couldn't be a "renewal" policy. It was thus necessarily the purchase of a new policy, and so under Pennsylvania law, Nationwide was required, as with any other purchase of uninsured (UM) or underinsured (UIM) motorist coverage, to provide its policyholder with a new stacking-waiver form. 75 Pa. C.S. § 1738(c). It failed to do that here.

After the Court issued its decision, Nationwide moved for reconsideration, arguing that the Court committed several clear errors of law. ECF 50. The parties then briefed that motion, so it's now ready for disposition.

On careful review and for the reasons that follow, the Court will deny the motion.

## DISCUSSION & ANALYSIS

A motion for reconsideration must rely on at least one of these grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). These motions "should be granted sparingly." *Williams v. Pa. Dep't of Corr.*, No. 20-794, 2023 WL 5529992, at *2 (W.D. Pa. Aug. 28, 2023) (Baxter, J.) (cleaned up).

Nationwide's motion focuses on the third ground. In pursuit of correcting clear errors of law and preventing manifest injustice, it asks the Court to reconsider four aspects of the September 11, 2024, summary-judgment opinion: (1) the Court's interpretation of "renewal" in 40 P.S. § 991.2001; (2) its interpretation of the "vehicle sharing program" scenario; (3) its interpretation of the "reasonable belief" scenario; and (4) its rejection of Nationwide's public-policy argument. ECF 51. The Court addresses each argument, in turn.

## I. The Court will not reconsider its interpretation of "renewal" in 40 P.S. § 991.2001.

Nationwide first argues that the Court clearly erred in how it interpreted Section 991.2001's definition of a "renewal" policy. ECF 51, p. 2. Nationwide argues that the Court committed a clear error of law when it focused on changes in "scope" between the 5437E346960 policy and One Product policy, because "scope" isn't a term in the statutory definition of renewal. *Id.* at pp. 2-3; ECF 48, p. 14 ("The One Product policy isn't a 'renewal' policy of insurance because there are some reductions in the scope of UM/UIM coverage."). The Court disagrees.

The statutory definition of "renewal" is as follows:

To issue and deliver at the end of an insurance policy period a policy which supersedes a policy previously issued and delivered by the same insurer or affiliated insurer and which provides ***types and limits of***

>    ***coverage at least equal*** to those contained in the policy being
>    superseded[.]

40 P.S. § 991.2001 (emphasis added).

Nationwide argues that only the "types and limits" of coverage need to be equivalent, not "scope." This misapprehends the words in the statute, bolded above.

"Types" can be readily understood to mean the coverage parts or grants. *See, e.g.*, *Motorists Ins. Cos. v. Emig*, 664 A.2d 559, 561 (Pa. Super. Ct. 1995) (explaining statutory notice in 75 Pa. C.S. § 1791 "must advise the applicant of the types and amounts of coverages which are required to be offered[,]" with Section 1791 describing benefits including UM/UIM and bodily-injury-liability coverage); Type, New Oxford American Dictionary (3d ed. 2010) (defining as "a category of people or things having common characteristics").

"Limits" means the monetary amounts of coverage. *See, e.g.*, Limit, Int'l Risk Mgmt. Inst., Inc., https://www.irmi.com/glossary, (last accessed Feb. 24, 2025) ("Limit is the maximum amount an insurance policy or reinsurance agreement can be called upon to pay for a specified coverage."); Limit, Nat'l Ass'n of Ins. Comm'rs, https://content.naic.org/glossary-insurance-terms (last accessed Feb. 24, 2025) (defining as "maximum value to be derived from a policy").

"Scope" means the extent of coverage. *See, e.g.*, Scope, New Oxford American Dictionary (3d ed. 2010) (defining as "the extent of the area or subject matter that something deals with or to which it is relevant"; "the opportunity or possibility to do or deal with something").

The concept of "scope" is thus captured by the most important language in the statute: "coverage at least equal." In other words, the types and limits must be the equivalent extent in the new policy as the old in order for the coverage to be "at least equal."

Nationwide doesn't agree with this. But if scope of coverage isn't the measure

of equivalence, then what is?  Nationwide's position appears to be that if Policy #1 has a Part A on "underinsured motorist coverage" and Policy #2 has a Part A on "underinsured motorist coverage," then the policies are equal (*i.e.*, have the same types of coverage), regardless of the specific language in those provisions.  But that can't be right.  Otherwise, a second policy could eviscerate much of the coverage through the narrowing of language (or even through separate exclusions), but still be considered "equal."  That is at odds with the statute here, and would produce an absurd reading of that statute.  The Court cannot read Section 991.2001 in a way that produces such an absurd result.  *See McConnaughey v. Bldg. Components, Inc.*, 637 A.2d 1331, 1334 n.4 (Pa. 1994) ("When construing statutes under Pennsylvania law, it is assumed that the legislature does not intend a result which is absurd or unreasonable.").

Moreover, this would be at odds with how both the Pennsylvania Insurance Department, as well as the Third Circuit, examines whether a new policy is or isn't a renewal.  *See* ECF 35-14, p. 1 (Department objection letter to One Product policy explaining "the Department[] had shared our concerns with the very likely possibility of reducing coverage for existing insureds in the rewritten auto policy.  Our laws are very strict . . . even for the most de minimis changes"); *see also Indian Harbor Ins. v. F & M Equip., Ltd*, 804 F.3d 310, 315-16 (3d Cir. 2015) (determining changes in new policy, including addition of exclusion to previously covered location, meant insurer breached contractual agreement to offer "renewal" policy).[1]

Nationwide also takes another angle with its argument, by trying to change the rules of engagement.  That is, all parties and the Court agreed from the outset of

---

[1] To be clear, the Court is not saying that a policy has to be ***identical*** to be a renewal. A policy could change by having different language and still be a renewal, as long as the types and coverages are "at least equal."  This is why in the summary-judgment opinion, the Court analyzed applications of the language changes in several parts of the One Product policy.

the case that the dispositive issue here was whether the New Product policy was or was not a renewal, and thus a purchase of UM/UIM coverage. *See, e.g.*, ECF 34, p. 9 (Nationwide arguing the One Product policy "was a renewal, pursuant to Nationwide's understanding, the [Insurance Department's] approval, and, importantly, under 40 P.S. § 991.2001"); ECF 38, p. 6 (Nationwide arguing "the sole dispositive issue before the Court is whether Nationwide was required to obtain new UM/UIM stacking waiver forms under 75 PA.C.S.A. § 1738 when it issued the One Product Policy to Eric McGuire, Sr.  A subset of this primary issue is whether the One Product Policy constitutes a 'renewal' within the meaning of 40 P.S. § 991.2001").

Now, in its reply brief in support of its motion for reconsideration, Nationwide argues for the first time that that's not really the issue.  It argues that changes to an insurance policy do not constitute a "purchase" of a new policy, and thus would not require an insurer to provide new stacking-waiver forms to its policyholder.  ECF 55, p. 3.  In other words, it doesn't matter whether there were some changes in the One Product policy; Mr. McGuire's prior stacking waiver governing the prior policy would control.

The problem with this argument is that it is based on cases that concern an entirely different part of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL).  Those cases concern Sections 1731 and 1734 of the MVFRL, which tie election of UM/UIM coverage to "issuance" or "delivery" of a policy.[2]  That is different than Section 1738, which ties the stacking waiver to "purchase" of UM/UIM coverage.  The Third Circuit has, in fact, expressly made this important distinction in distinguishing between these sections and refusing to treat them the same.  *See Geist v. State Farm Mut. Auto. Ins. Co.*, 49 F.4th 861, 866 (3d Cir. 2022) ("Though

---

[2] *Blood v. Old Guard Ins. Co.*, 934 A.2d 1218, 1227 (Pa. 2007); *Geist v. State Farm Mut. Ins. Co.*, 49 F.4th 861, 866 (3d Cir. 2022); *Nationwide Mut. Ins. Co. v. Merdjanian*, 195 F. App'x 78, 81-83 (3d Cir. 2006).

Geist invites us to do so, we cannot ignore the legislature's decision to tie the duty to seek an election of UIM-coverage limits to the issuance of a policy rather than the purchase of coverage.").

Thus, the issue here still turns on whether there was a "purchase" of UM/UIM coverage.  And, as the Court found in its prior decision, obtaining a policy with lesser UM/UIM coverage is the "purchase" of UM/UIM coverage.  It therefore requires another stacking waiver.

In sum, the Court finds that how it interpreted the statutory language here was correct.  The Court thus denies the motion for reconsideration of this issue.

## II.    The Court will not reconsider its interpretation of the "vehicle sharing program" scenario.

Turing next to the specific coverage "scenarios" that prompted the Court's summary-judgment opinion, Nationwide argues that the Court committed a clear error of law when it held that the One Product policy reduces coverage for a policyholder injured while riding in his vehicle being operated by a neighbor under the written terms of a personal vehicle sharing program.  ECF 51, pp. 4-6.  The Court disagrees.

In its prior opinion, the Court concluded that the One Product policy reduces coverage because the 5437E346960 policy doesn't have a relevant exclusion in the UM/UIM coverage parts.  ECF 48, p. 16.  Nationwide suggests that in so holding, the Court missed the "car-for-hire" exclusion[3] to UM/UIM coverage for "[a]ny motor vehicle while used to carry persons or property for a fee or compensation."  ECF 51, p. 5 (cleaned up).  This exclusion provides, in full:

---

[3] *See Percic v. Nationwide Mut. Ins. Co.*, No. 22-01297, 2023 WL 9492344, at *4 (W.D. Pa. Oct. 12, 2023) (Eddy, M.J.) (discussing exclusion).

This coverage does not apply to:

1. Any **motor vehicle** while used:

   a) to carry persons or property for a fee or compensation; or
   b) on a regular basis for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper and mail delivery.

   Exclusion 1.a) does not apply to **motor vehicles** used in shared-expense car pools.

ECF 35-13, pp. 29 (UM exclusion 1), 33 (UIM exclusion 1).

Nationwide argues that this exclusion would bar coverage for the neighbor car-sharing scenario under the 5437E346960 policy, just like the One Product policy exclusion to UM/UIM coverage for bodily injury sustained by any insured "while enrolled in a personal vehicle sharing program under the terms of a written agreement[.]"  ECF 35-10, pp. 53-54 (UM exclusion B.5), 57 (UIM exclusion B.4) (cleaned up).  It argues that the new "vehicle sharing program" exclusion was meant to pick up emerging car-rental businesses, like Turo.  ECF 51, pp. 5-6.[4]

Nationwide's argument cuts against it.  Importantly, both the 5437E346960 policy and the One Product policy have this same "car-for-hire" exclusion.  ECF 35-13, pp. 29 (UM exclusion 1), 33 (UIM exclusion 1); ECF 35-10, pp. 53 (UM exclusion B.2.a), 57 (UIM exclusion B.1.a).[5]

The One Product policy adds the entirely new "personal vehicle sharing program" exclusion, which, as Nationwide admits, excludes certain losses associated

---

[4] Turo is essentially like an "Airbnb" for cars, where owners of cars can privately rent their cars to other people.  Jim Clash, *Turo, The Airbnb Of Car Rental Companies, Offers Corvettes, Ferraris, Teslas*, Forbes (June 18, 2018), https://www.forbes.com/sites/jimclash/2018/06/18/turo-the-airbnb-of-car-rental-companies-offers-corvettes-ferraris-teslas/ (last accessed Mar. 4, 2025).

[5] It is immaterial for the Court's purposes here, but the One Product policy's version has slight wording changes (applying to bodily injury while the covered auto is being used as a car-for-hire) and new exclusionary language for a "transportation network platform."

with new car-sharing arrangements, like Turo. ECF 51, pp. 5-6; ECF 35-10, pp. 53-54 (UM exclusion B.5), 57 (UIM exclusion B.4). That exclusion wasn't in the original policy, but it now serves to reduce coverage in the One Product policy.[6] In other words, even if Nationwide is right about the initial scenario proffered by Mr. McGuire involving a neighbor carshare agreement, what about Turo? There was some coverage for bodily injury associated with a Turo arrangement under the initial policy, but not under the One Product policy.

Because this entirely new "vehicle sharing program" exclusion reduces UM/UIM coverage, the Court did not clearly err in finding that that One Product policy was not a renewal.

### III.    The Court will not reconsider its interpretation of the "reasonable belief" scenario.

Nationwide next argues that the Court committed a clear error of law when it held that the One Product policy's revised "non-permissive-use" exclusion[7] is more restrictive than that exclusion in the 5437E346960 policy. ECF 51, pp. 6-7. The Court disagrees.

In its prior opinion, the Court concluded that the 5437E346960 policy would not bar driving on a suspended license, but the One Product policy would, because

---

[6] Nationwide can't credibly argue that the "car-for-hire" exclusion always excluded the "Turo scenario." If that is the case, then it would make the "personal vehicle sharing program" exclusion superfluous. *See Com. ex rel. Kane v. UPMC*, 129 A.3d 441, 464 (Pa. 2015) ("[A] contract must be interpreted to give effect to all of its provisions. Thus, our Court will not interpret one provision of a contract in a manner which results in another portion being annulled." (cleaned up)). Even so, the "car-for-hire" exclusion plainly applies when a car is being "used to carry persons or property for a fee or compensation,"—*e.g.*, cabs, Ubers, and deliveries. That is not the same as Turo, where a car isn't being used to carry persons for a fee; rather, a person rents their car to another.

[7] *See Nationwide Mut. Ins. Co. v. Cummings*, 652 A.2d 1338, 1344 (Pa. Super. Ct. 1994) (discussing exclusion).

the One Product policy's exclusion was revised to state that a policyholder can't use a vehicle without a reasonable belief of entitlement to do so, and a policyholder can't have a reasonable belief if his or her license has been suspended, revoked, or never issued. ECF 48, p. 17.

Nationwide maintains that coverage would be barred even under the 5437E346960 policy, because that policy has a separate exclusion for bodily injury suffered "in connection with any criminal trade or transaction[,]" and driving on a suspended license is a crime. ECF 51, pp. 6-7 (citing ECF 35-13, pp. 30, 34). Nationwide doesn't provide any cases interpreting this exclusion and the Court couldn't find any (in Pennsylvania or otherwise). But a review of the exclusion's language shows that it would not apply. This is so for at least two reasons.

First, even assuming that driving on a suspended license can be a "crime" (and this is a disputed proposition),[8] driving on a suspended license certainly cannot be reasonably construed to be a "criminal trade or transaction." "Trade" is defined as "the action of buying and selling goods and services[,]" and "a skilled job[.]" Trade, New Oxford American Dictionary (3d ed. 2010); *see also* trade, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/trade (defining trade as "the business of buying and selling or bartering commodities[,]" "an act or instance of trading : transaction[,]" "an occupation requiring manual or mechanical skill[,]" and "a customary course of action"). And "transaction" is defined as "an instance of buying

---

[8] "The Pennsylvania 'legislature has the exclusive power to pronounce which acts are crimes, to define crimes, and to fix the punishment for all crimes.'" *Slusar v. Sestili*, No. 11-1311, 2013 WL 5774019, at *2 (W.D. Pa. Oct. 24, 2013) (McVerry, J.) (quoting *Commonwealth v. Church*, 522 A.2d 30, 35 (Pa. 1987)). The General Assembly defined "crime" as an offense "for which a sentence of death or of imprisonment is authorized[,]" and which includes murders, felonies, and misdemeanors. 75 Pa. C.S. § 106(a). Driving on a suspended license is a summary offense, *see* 75 Pa. C.S. § 1543(a), an offense "separately defined in 18 Pa. C.S.A. § 106(c), [and] . . . not within the legislative definition of the term 'crime'—particularly when the summary violation is not punishable by imprisonment." *Slusar*, 2013 WL 5774019, at *2.

or selling something; a business deal[.]"  Transaction, New Oxford American Dictionary (3d ed. 2010); *see also* transaction, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/transaction (defining transaction as "something transacted[,]" and "an act, process, or instance of transacting"); transact, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/transact (defining transact as "to carry to completion[,]" "to carry on the operation or management of[,]" and "to carry on business").  Driving on a suspended license does not fit within any of these definitions.

Second, it would read the driving-without-a-license exclusion that Nationwide ***did*** include in other coverage parts of the 5437E346960 policy out of the policy.  As the Court discussed in its summary-judgment opinion, the 5437E346960 policy bars coverage where a motor vehicle is "operated by an Individual without a current valid operator's license" in three cases: those coverage parts for "Physical Damage," "Auto Liability," and "First Party Benefits[.]"  ECF 48, pp. 19-20.  Incidentally, two of those three coverage parts ***also*** include the crime exclusion present in the UM/UIM coverage parts and to which Nationwide now points.  ECF 35-13, pp. 15 ("Physical Damage" exclusion 9), 21 ("Auto Liability" exclusion 14).

"A contract must be read to give effect to all its provisions and to render them consistent with each other."  *PNC Bank, N.A. v. Axis Ins.*, 720 F. Supp. 3d 367, 377 (W.D. Pa. 2024) (Hornak, C.J.) (cleaned up).  Reading the crime exclusion as Nationwide does would violate this tenant and make these "no-license" exclusions superfluous.  "Pennsylvania courts long have admonished that contract terms will not be construed in such a manner so as to render them meaningless," and the Court will not adopt an interpretation that does exactly that.  *USX Corp. v. Liberty Mut. Ins. Co.*, 444 F.3d 192, 200 (3d Cir. 2006) (cleaned up); *see also Com. ex rel. Kane v. UPMC*, 129 A.3d 441, 464 (Pa. 2015) ("[A] contract must be interpreted to give effect to all of its provisions.  Thus, our Court will not interpret one provision of a contract

in a manner which results in another portion being annulled." (cleaned up)).

Accordingly, the Court finds that the crime exclusion would not capture driving on a suspended license, and so denies Nationwide's motion for reconsideration of this issue.

## IV.    The Court will not reconsider its holding with respect to Nationwide's public policy arguments.

Lastly, Nationwide contends that the Court's rejection of Nationwide's public policy argument would create manifest injustice. ECF 51, pp. 10-14. Nationwide argues that the public policy threatened by the Court's summary-judgment opinion is not simply the postage costs Nationwide will incur by mailing new forms but "a massive increase in insurance costs" to Nationwide's Pennsylvania customers "by requiring the mass reaffirmation of insurance selections at the risk of higher premiums for failure to do so." *Id.* at p. 3.

Even fully crediting this consequence, the Court can't simply find in Nationwide's favor based on the public-policy consequences flowing from an adverse decision. The Court is obligated to assess the changes in the new policy, and determine whether those changes provide less coverage, regardless of the ramifications of that decision. *See Barnard v. Travelers Home & Marine Ins.*, 216 A.3d 1045, 1051 (Pa. 2019) (rejecting public policy arguments that would "override the plain language" of the statute).

So the Court declines to reconsider its ruling on this issue, as well.

\*     \*     \*

Accordingly, after careful consideration, it is hereby **ORDERED** that Nationwide's motion for reconsideration is **DENIED**.

Date: March 6, 2025

BY THE COURT:

/s/ J. Nicholas Ranjan
United States District Judge